IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JOSEPH STALLARD,<br>*Plaintiff,*<br><br>v.<br><br>GOLDMAN SACHS GROUP, INC., *et al.*,<br>*Defendants.* | )<br>)<br>)<br>)<br>) Civil Action No. 1:24-cv-2331 (PTG/WEF)<br>)<br>)<br>)<br>) |

## **MEMORANDUM OPINION**

This matter comes before the Court on Defendants' Motion to Dismiss for Failure to State a Claim (Dkt. 50) and Plaintiff's Motion for Sanctions (Dkt. 61). On September 18, 2020, Plaintiff Joseph A. Stallard, proceeding *pro se*, originally filed this civil action against Goldman Sachs Group and Goldman Sachs & Co., LLC ("Goldman Defendants"), as well as Voodoo SAS ("Voodoo") (collectively, "Defendants") in the United States District Court for the District of Columbia. Dkt. 1 ("Compl."). Plaintiff alleges that Defendants: (1) engaged in copyright and trademark infringement of his mobile video game, "Knocky Balls"; (2) violated the antitrust laws and the Racketeer Influenced and Corrupt Organizations ("RICO") Act; and (3) violated several state laws. *Id.* ¶¶ 176-289.

On November 27, 2024, United States District Judge Reggie B. Walton granted in part and denied in part Goldman Defendants' Motion to Dismiss and Defendant Voodoo's Motion to Dismiss. *See* Dkts. 43, 44. The court dismissed Plaintiff's RICO and antitrust claims for lack of standing. Dkt. 43 at 24. The court also determined that it lacked personal jurisdiction over Defendants with respect to Plaintiff's remaining trademark (Counts 1-5, 15), copyright (Counts 6-8), and state-law claims (Counts 16-20). *Id.*

On December 20, 2024, this matter was transferred to this Court. Dkt. 45. On January 31, 2025, Defendants filed another motion to dismiss. Dkt. 50. On February 3, 2025, the Court entered an order notifying Plaintiff that he had twenty-one days (21) days from the entry of the order to file an opposition to Defendants' Motion. Dkt. 52; *see also Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). On February 20, 2025, Plaintiff filed a motion for sanctions. Dkt. 61. The motions are fully briefed. Dkts. 51, 60, 62, 66, 69, 70. For the reasons that follow, the Court grants in part and denies in part Defendants' Motion to Dismiss and denies Plaintiff's Motion for Sanctions.

**Background**

For the purposes of these motions, the following facts, taken from Plaintiff's Complaint, and all attachments thereto, are accepted as true:[1]

Plaintiff is a resident of Virginia doing business under the name Osgoode Media. Compl. ¶ 5. He created a mobile video game called "Knocky Balls," and registered a trademark related to the game with the United State Patent and Trademark Office ("USPTO"). *Id.* ¶ 25. On December 9, 2016, Plaintiff first used the Knocky Balls mark in commerce when he published the game to several app stores, beginning with the Tizen Store. *Id.* ¶ 26. On December 28, 2016, Plaintiff used the Knocky Balls mark in United States commerce for the first time when he published the game on the Microsoft Store. *Id.* ¶ 27.

---

[1] In considering a motion to dismiss for failure to state a claim, "a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). In addition, the court may "consider documents that are explicitly incorporated into the complaint by reference, and those attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citation omitted). Because Plaintiff is proceeding *pro se*, the Court construes his pleadings liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

On August 10, 2018, Voodoo published the video game "Knock Balls" on the App Store (iOS). *Id.* ¶ 28. On September 19, 2018, Voodoo published the game on the Google Play store. *Id.* "The logo for Knock Balls was remarkably similar to Knocky Balls with a ball hitting blocks with a splat icon." *Id.* On December 26, 2018, Plaintiff applied to register his Knocky Balls mark with the USPTO. *Id.* ¶ 30. On June 24, 2019, Plaintiff, through the USPTO, also filed "an application for International Registration with the World Intellectual Property Organization (WIPO)." *Id.* ¶ 31. On July 11, 2019, the "USPTO certified the International Application for the Knocky Balls mark, and they forwarded the application to the International Bureau ("IB") of the WIPO." *Id.* ¶ 32.

On July 13, 2019, "Knocky Balls was removed from Google Play." *Id.* ¶ 33. This was caused by Voodoo reporting Knocky Balls for an impersonation violation. *Id.* Voodoo deceived the Google employee who "mistakenly removed Plaintiff's Knocky Balls game for infringing on Voodoo's Knock Balls mark." *Id.* ¶ 178.

On July 31, 2019, the "USPTO issued the notice of publication for the Knocky Balls mark." *Id.* ¶ 35. That same day, Voodoo offered to buy Knocky Balls through the company We Buy Apps and referenced the Knocky Balls previously-removed Google Play link. *Id.* On November 5, 2019, the USPTO registered Plaintiff's Knocky Balls mark for use on video games. *Id.* ¶ 25.

Both Knocky Balls and Knock Balls were developed using a software engine called Unity. *Id.* ¶ 72. Independent developers often use Unity because it is easy to use for those without programming knowledge. *Id.* at ¶ 42. Unity operates on a C# programming language, which can be compiled into apps or code libraries. *Id.* ¶¶ 39, 43. These compilations can be further packaged into a single file, like an Android Package ("APK") file or a Tizen Package ("TPK") file. *Id.* ¶ 40. C# has a feature called reflection, which allows someone to retrieve "the original C# code from a

3

compiled file." *Id.* ¶ 41. Because Unity operates on the C# language, an individual can unpack the Android TPK or Tizen TPK to retrieve the original source code from a Unity game. *Id.* ¶ 43. This feature makes Unity games easy to copy. *Id.* ¶ 75. Plaintiff registered the Unity version of Knocky Balls with the United States Copyright Office with an effective date of December 26, 2018. *Id.* ¶ 76.

Plaintiff distributed Knocky Balls[2] on multiple platforms such as "Microsoft Store, itch.io, Game Jolt, Google Play, Amazon Appstore, and Tizen Store." *Id.* ¶ 72. Voodoo only distributed Knock Balls on the App Store and Google Play but not Tizen. *Id.* ¶ 73. When Plaintiff unpacked the file format for Knock Balls, he discovered a Tizen.dll file, "a file only needed for Tizen Store development." *Id.* ¶ 74.

## Legal Standard

### A. 12(b)(6) Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss when a complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This pleading standard does not require detailed factual allegations; rather, the plaintiff must plead factual content allowing the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must "allege facts sufficient to state all the elements of [his] claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). Accordingly, a complaint is insufficient if it relies upon "naked

---

[2] The Complaint states that Plaintiff distributed "Knock Balls." *Id.* ¶ 75. This appears to be an error; the Court construes this to refer to "Knocky Balls."

4

assertions" and "unadorned conclusory allegations" devoid of "factual enhancement." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).

When reviewing a motion brought under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint[,]" drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (first quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); and then quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)). The Court must also construe *pro se* complaints liberally. *Erickson*, 551 U.S. at 94. However, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999) (quoting *Sado v. Leland Mem'l Hosp.*, 933 F. Supp. 490, 493 (D. Md. 1996)).

### B. Motion for Sanctions

"Federal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 144 (4th Cir. 2020) (quoting *Goodyear Tire & Rubber Co. v. Hanger*, 581 U.S. 101, 107 (2017)). "That authority includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* (quoting *Goodyear*, 581 U.S. at 107). A court may impose sanctions when a party acts "wantonly, vexatiously, or in bad faith." *AMF Bowling Ctrs, Inc. v. Tanase*, No. 3:23-cv-448, 2024 WL 5081964, at *3 (E.D. Va. Dec. 11, 2024) (quoting *Williams v. Cnty. of Fairfax*, 1998 WL 708694, at *3 (4th Cir. Sept. 24, 1998)).

## Analysis

The Court first addresses the trademark claims, followed by the copyright claims, then the state-law claims, and finally Plaintiff's Motion for Sanctions.

### A. Counts 1-5 and 15 (Trademark Claims)

*Counts 1-3, 15 (as to Voodoo)*

Defendants assert the Court should dismiss Plaintiff's trademark claims because the name and logo of "Knocky Balls" are not distinct enough to assert trademark claims for infringement or unfair competition under 15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(a) of the Lanham Act. Dkt. 51 at 16. Plaintiff counters that he has plausibly alleged all elements of his claim. *See* Dkt. 60.

While 15 U.S.C. § 1114 typically applies to registered marks, 15 U.S.C. § 1125(a) can also protect unregistered marks. *See Perini Corp. v. Perini Const., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990) ("Section 43(a) of the Lanham Act . . . generally has been construed to protect against trademark, service mark, and trade name infringement even though the mark or name has not been federally registered."). The necessary elements to state a claim under either statute are largely the same. *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001) (listing the same elements under either statute). In addition, "Virginia common law trademark infringement and unfair competition claims require the same proof, including a likelihood of confusion, as the Lanham Act offenses." *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 162 (4th Cir. 2014).[3]

---

[3] Defendants incorrectly state that there is no common law cause of action for trademark infringement or unfair competition. Dkt. 51 at 26–27. As stated above, there are federal, state, and common law causes of action for trademark infringement and unfair competition. *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 162 (4th Cir. 2014).

6

To prevail on a claim of trademark infringement or unfair competition under 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a) at the motion to dismiss stage, a plaintiff must plausibly allege:

> (1) that it possesses a mark; 2) that the defendant used the mark; 3) that the defendant's use of the mark occurred in commerce; 4) that the defendant used the mark in connection with the sale, offering for sale, distribution, or advertising of goods and services; and 5) that the defendant used the mark in a manner likely to confuse customers.

*Gov't Emps. Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 702 (E.D. Va. 2004) (citation modified). Ultimately, a plaintiff must plead "(1) [he] owns a valid and protectable mark, and that (2) another's use of the mark creates a likelihood of consumer confusion." *RXD Media, LLC v. IP Application Dev. LLC*, 986 F.3d 361, 369 (4th Cir. 2021) (citing *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 660 (4th Cir. 2018)). "The likelihood of confusion is a factual issue dependent on the circumstances of each case and is ill-suited on a motion to dismiss." *See Potomac Conf. Corp. of Seventh-day Adventists v. Takoma Acad. Alumni Ass'n, Inc.*, 2 F.Supp.3d 758, 768 (D. Md. 2014) (citing *Petro Stopping Ctrs., L.P. v. James River Petroleum, Inc.*, 130 F.3d 88, 92 (4th Cir. 1997)). That being said, a plaintiff cannot rely on conclusory allegations to withstand a motion to dismiss. *Id.*

Plaintiff appears to seek trademark protection for his "Knocky Balls logo" as well as in the "Knocky Balls" name. Compl. ¶¶ 177, 182. Defendants argue Plaintiff's trademark is generic and therefore not protected. Dkt. 51 at 16-17. The Court must examine the Complaint to determine whether Plaintiff has plausibly alleged that the "Knocky Balls" name or logo has been infringed. *Stevenson v. City of Seat Pleasant*, 743 F.3d 411, 416 n.3 (4th Cir. 2014).

"Courts classify trademarks into a series of categories based on degrees of distinctiveness." *Nat'l Fed'n of the Blind, Inc. v. Loompanics Enters., Inc.*, 936 F. Supp. 1232, 1246 (D. Md. 1996). The USPTO does not register a mark that it determines is "generic"; it must "at least . . . be

7

descriptive" and "the applicant [must] prove that the mark has secondary meaning." *Id.* at 1247. "[A] registered mark is presumed to be valid . . . and (on the continuum of strong to weak marks) at least a descriptive mark with secondary meaning." *Id.*

Here, Plaintiff alleges that on December 26, 2018, he applied to the USPTO to trademark "Knocky Balls" "for use on video games," and on November 5, 2019, the USPTO registered the trademark. Compl. ¶¶ 25, 30. Plaintiff fails to specify if the registration is for his logo or for the "Knocky Balls" name. Because Plaintiff is proceeding *pro se* and has alleged that he registered the mark for trademark protection, the Court liberally construes Plaintiff to allege that he registered both the "Knocky Balls" name and logo as trademarks.

Since Plaintiff has alleged that he has registered his mark, the Court presumes "the registered mark is valid and protectable." *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 314 (4th Cir. 2017). At this stage, the Court will not consider Defendants' arguments that Plaintiff's marks are generic or lack secondary meaning. *Stat Ltd. v. Beard Head, Inc.*, 60 F.Supp.3d 628, 632 (E.D. Va. 2014) (citing *Petro Stopping Ctrs., L.P.*, 130 F.3d at 92) (stating that the issue of distinctiveness, like likelihood of confusion, is a factual issue that is ill-suited for resolution on a motion to dismiss). Plaintiff has alleged he has registered marks and stated sufficient facts to show a likelihood of confusion between his mark and that of Defendants. *See* Comp. ¶¶ 182, 219 (alleging that Voodoo reported Plaintiff's Knocky Balls for an impersonation violation). Accordingly, Plaintiff has alleged facts sufficient to support his claim of trademark infringement as to his name and logo, and the Court denies Defendants' motion with respect to Counts 1–3 and 15 as to Defendant Voodoo.

8

*Counts 4, 5 and 15 as to Goldman Defendants*

The Court finds that Plaintiff fails to state a claim against Goldman Defendants for contributory or vicarious trademark infringement (Counts 4, 5, and 15). "To be liable under a theory of contributory trademark infringement, 'a defendant must (1) intentionally induce another to infringe a trademark, or (2) continue to supply a product to a third party with actual or constructive knowledge of the infringement.'" *Epic Tech, LLC v. Raleigh Startup Sols. LLC*, 2023 WL 9051298, at *6 (E.D.N.C. 2023) (quoting *Size, Inc. v. Network Sols., Inc.*, 255 F. Supp. 2d 568, 572 (E.D. Va. 2003)). To state a claim for vicarious trademark infringement, "[a] plaintiff[] must plausibly allege 'that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product.'" *Id.* (quoting *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 165 (4th Cir. 2012)).

Here, Plaintiff fails to include any factual assertions that Goldman Defendants induced Voodoo to infringe Plaintiff's trademark. Moreover, Plaintiff has failed to allege that Goldman Voodoo have a partnership, authority to bind one another in transactions, or exercise control over the infringing product. The Complaint only asserts that Goldman Defendants invested in Voodoo and other conclusory allegations. Compl. ¶¶ 192, 194. Thus, Plaintiff fails to state a claim for contributory or vicarious liability for trademark infringement against Goldman Defendants. Therefore, the Court dismisses Counts 4, 5, and 15 as to them.

**B. Counts 6-8 (Copyright Claims)**

*Count 6*

Defendants contend the Court should dismiss Plaintiff's copyright claims because Plaintiff has not pled sufficient facts to show that Defendants copied any protectible elements of Plaintiff's

9

work. Dkt. 51 at 7-16. Plaintiff contends that many of Defendants' arguments are inappropriate to be resolved on a motion to dismiss. Dkt. 60 at 14. The Court agrees with Defendants.

To state a claim for copyright infringement, "a plaintiff must plausibly plead two elements: (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original." *Home Design Servs., Inc. v. J.F. Schoch Bldg. Corp.*, No. 2:11-cv-574, 2012 WL 442008, at *2 (E.D. Va. Feb. 10, 2012) (citing *Feist Publ'ns, Inc. v. Rural Tel. Svcs. Co.*, 499 U.S. 340, 361 (1991)). Once a plaintiff alleges he has a valid copyright, he "must show that the defendant copied portions of the plaintiff's program, and that the elements that were copied are 'protected expression and of such importance to the copied work that the appropriation is actionable.'" *SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 610–11 (E.D. Va. 2005) (citations omitted). Put differently, "[m]erely because a work is copyrighted does not mean that every part of that work is copyrighted." *Id.* at 611 (citing *Feist Publ'ns, Inc.*, 499 U.S. at 348).

Here, Plaintiff has alleged that he has registered his work with the United States Copyright Office. Compl. ¶ 76. "A certificate of registration issued by the Copyright Office is 'prima facie evidence of the validity of the copyright . . . . When such a certificate exists, the burden shifts to the defendant to prove that the claimed copyrights are invalid." *Charles W. Ross Builder, Inc. v. Olsen Fine Home Bldg., LLC*, 977 F. Supp. 2d 567, 581 (E.D. Va. 2013) (quoting *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 428 (4th Cir. 2010)). Defendants do not dispute that Plaintiff has a certificate of registration. Dkt. 51 at 3; Dkt. 66 at 4-5. Thus, at this stage, the Court will consider whether Plaintiff has plausibly alleged that Defendants copied original, and by extension, protected elements of his work.

Plaintiff alleges that Defendants have copied the audiovisual elements of his video game as well as the source code of his work. Compl. ¶¶ 197, 200, 203. In the Fourth Circuit, video

games are protectible in copyright as audiovisual works. *Red Baron-Franklin Park, Inc. v. Taito Corp.*, 883 F.2d 275, 278 (4th Cir. 1989) (citing *M. Kramer Mfg. Co. v. Andrews*, 783 F.2d 421, 435–36 (4th Cir. 1986)). The "[l]iteral elements of computer programs, such as source and object codes, are entitled to copyright protection."[4] *SecureInfo Corp.*, 387 F. Supp. 2d at 612 (citing *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 702 (2d Cir. 1992). "Copyright protection may also extend beyond a work's strictly textual form to its nonliteral elements." *Id.* "Nonliteral elements of a computer program may receive copyright protection even if they are individually unprotectable, if they are compiled in a unique or creative way." *Id.* In addition, "a copyright in the audiovisual display, which display is created by a computer program, protects not only the audiovisual from copying, but also the underlying computer program to the extent the program embodies the game's expression." *M. Kramer Mfg. Co., Inc.*, 783 F.2d at 442. Therefore, Plaintiff may base his claim for infringement on the audiovisual display of his game as well as the underlying source code.

"Copying can be proven through direct or circumstantial evidence." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 537 (4th Cir. 2015) (quoting *Bldg. Graphics, Inc. v. Lennar Corp.*, 708 F.3d 573, 578 (4th Cir. 2013)). As part of this inquiry, "courts 'filter out the unoriginal, unprotectable elements—elements that were not independently created by the inventor, and that possess no minimal degree of creativity—through a variety of analyses.'" *Bldg. Graphics, Inc. v. Lennar Corp.*, 866 F. Supp. 2d 530, 539 (W.D.N.C. 2011) (quoting *Kohus v. Mariol*, 328 F.3d 848, 855 (6th Cir. 2003)).

---

[4] The Copyright Act defines "computer program" as "a set of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result." 17 U.S.C § 101; *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 17 (2021).

11

Plaintiff asserts that he has alleged direct evidence of copying because: (1) both games were created through Unity; (2) both games contain a "tizen.dll" file, a file exclusively used for Tizen Store distribution; and (3) Defendant Voodoo never published Knock Balls on Tizen Store. Compl. ¶¶ 39–43, 197. The Court finds that Plaintiff has failed to allege facts sufficient to show that the presence of this file in the code is unique or creative such that it could be considered original and protectible in copyright. Indeed, Plaintiff does not provide the source code of either game to the Court or allege other aspects of the codes' similarities. Dkt. 60 at 7–8 (acknowledging the source code is "not in the record."). Therefore, Plaintiff has failed to allege direct evidence of copying.

To establish copying through circumstantial evidence, a plaintiff must show that: (1) "the defendant had access to the copyrighted work," and (2) "that the defendant's work is substantially similar to the protected material." *Epic Tech, LLC*, 2023 WL 9051298, at *3 (quoting *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 801 (4th Cir. 2001)). Here, Defendants contend that Plaintiff has failed to allege that Defendants had access to his work or that Defendants' work is "substantially similar" to the *protected* material in Plaintiff's work. Dkt. 51 at 14–16.

"In order to prove access, a plaintiff must show that a defendant had a reasonable opportunity to view or copy the work at issue. 'A mere possibility that such an opportunity could have arisen will not suffice.'" *Moore v. Lightstorm Ent.*, 992 F. Supp. 2d 543, 550 (D. Md. 2014) (quoting *Towler v. Sayles*, 76 F.3d 579, 582 (4th Cir. 1996)). "A plaintiff can [plead access] in one of two ways: (1) a particular chain of events is established between the plaintiff's work and the defendant's access to that work or (2) the plaintiff's work has been widely disseminated." *Buchanan v. Sony Music Ent.*, 2020 WL 2735592, at *6 (D.D.C. May 26, 2020) (quotation omitted).

Here, Plaintiff alleges that Knocky Balls "was available for worldwide download on major video game marketplaces." Compl. ¶ 198. The Court finds that, in construing this in the light most favorable to Plaintiff, these facts demonstrate "widespread dissemination . . . [with] a significant showing of ubiquity." *Buchanan*, 2020 WL 2735592, at *6 (citing *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1144 (9th Cir. 2009)) (finding that plaintiff failed to sufficiently allege that defendants had access to registered work where plaintiff only mailed cassette tapes to certain music labels and did not even allege that the cassettes he mailed contained the disputed song). Therefore, Plaintiff has plausibly pled Defendants had access to Plaintiff's work.

Despite this, Plaintiff fails to allege facts sufficient to show that the protected elements of the work are substantially similar. "To show substantial similarity, the plaintiff must establish that the two works are both 'extrinsically' and 'intrinsically' similar." *Humphreys & Partners Architects, L.P.*, 790 F.3d at 537–38 (quoting *Universal Furniture Int'l, Inc.*, 618 F.3d at 435). To satisfy the objective "extrinsic" similarity prong, the plaintiff must show that the works share "substantially similar" ideas. *Towler v. Sayles*, 76 F.3d 579, 583 (4th Cir. 1996). "The intrinsic inquiry, in contrast, implicates the perspective of the works' intended observer . . . and looks to the total concept and feel of the works . . . ." *Humphreys & Partners Architects, L.P.*, 790 F.3d at 538 (quoting *Universal Furniture Int'l, Inc.*, 618 F.3d at 435). Importantly, the substantially similar standard requires that a plaintiff show not just that the works are similar but that the "*original* elements" within the works are similar. *Universal Furniture Int'l, Inc.*, 618 F.3d at 436.

"Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Id.* at 430 (quoting *Feist Publ'ns, Inc.*, 499 U.S. at 345). "Strictly speaking the idea of the game itself is not protected but the shape and characteristics of the cards

13

and the 'shapes, sizes, colors, sequences, arrangements and sounds [that] provides something 'new or additional over the idea' are protected." *M. Kramer Mfg. Co., Inc.*, 783 F.2d at 435 (quoting *Atari, Inc. v. N. Am. Phillips Consumer Elecs., Corp.*, 672 F.2d 607, 617 (7th Cir. 1982), *cert. denied*, 459 U.S. 880 (1982)).

Here, Plaintiff does not allege that the copied elements of his game involved protectible material. *See* Dkt. 60 at 12–14. Although Plaintiff contends that both games have the same "concept and feel," as stated above, the *protected* elements of the copied works must be substantially similar. *Universal Furniture Int'l, Inc.*, 618 F.3d at 436; *see* Compl. ¶ 200. The game's core idea appears to be toppling blocks with a projectile. *Id.* Plaintiff's allegations compare some of the audiovisual elements, titles, and logos between Knocky Balls and Knock Balls but do not sufficiently demonstrate how Knocky Balls is original in its expression of the games' core idea. Compl. ¶ 200 (describing similarity between level progression and level backgrounds); *id.* ¶ 201 ("Knock Balls and Knocky Balls were in the same marketplace, had similar logos and almost identical titles."). In addition, "a list comparing 'random similarities scattered throughout the works' are inherently subjective and unreliable.'" *Towler*, 76 F.3d at 584 (quoting *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984)). Indeed, these allegations neither identify the elements of the game that Plaintiff believes are creative or unique, nor how Plaintiff's game "provides something 'new or additional over the idea.'" *M. Kramer Mfg. Co., Inc.*, 783 F.2d at 435 (quoting *Atari, Inc.*, 672 F.2d at 617). "Copyright protection will extend only to those elements of a work that are original to the creator." *Bldg. Graphics, Inc.*, 866 F. Supp. 2d at 538 (citing *Feist Publ'ns*, 499 U.S. at 348). Accordingly, the Court dismisses Count 6.

*Counts 7 and 8*

Defendants contend that Goldman Defendants cannot be held contributorily or vicariously liable for Defendant Voodoo's alleged copyright infringement. Dkt. 51 at 23–26. Defendants claim that Plaintiff did not plausibly allege that Goldman Defendants knew of the infringing activity, or that they encouraged it. *Id.* at 24. The Court agrees.

"One infringes contributorily by intentionally inducing or encouraging direct infringement and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (citation modified). "Under a theory of contributory infringement, 'one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another' is liable for the infringement, too." *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004) (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt. Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)).

Plaintiff "concedes that the contributory copyright infringement claims fail if the underlying direct infringement claims fail." Dkt. 60 at 21. As stated above, because Plaintiff has failed to state a claim for direct infringement, he cannot state a claim for contributory infringement. Therefore, the Complaint fails to state a claim of contributory copyright infringement against Goldman Defendants.[5]

---

[5] Even if Plaintiff had stated a claim for direct infringement, Plaintiff has not sufficiently pled that Goldman Defendants contributorily infringed on Plaintiff's work The Complaint contains no allegations that Goldman Defendants had knowledge of Voodoo's alleged infringing activity. Plaintiff alleges: (1) "Goldman invested almost $200 million in Voodoo and became a chief shareholder"; (2) "Goldman is careful about their investments and operations" and (3) Voodoo regularly infringes on other audiovisual material. Compl. ¶¶ 44–75, 208. These allegations do not support his assertion that Goldman was aware of Voodoo's alleged copyright infringement of his game Knocky Balls, because they do not concern Plaintiff's game. In addition, Plaintiff fails to provide authority to support the proposition that Goldman Defendants' investment in Voodoo is

Plaintiff's claim for vicarious copyright infringement also fails. "A defendant may be held vicariously liable for a third party's copyright infringement if the defendant '[1] profits directly from the infringement and [2] has a right and ability to supervise the direct infringer.'" *Sony Music Ent. v. Cox Commc'n, Inc.*, 93 F.4th 222, 229–30 (4th Cir. 2024) (quoting *Metro-Goldwyn-Mayer Studios Inc.*, 545 U.S. at 930 n.9). In this case, the Complaint fails to allege that Goldman Defendants had the right and ability to supervise Voodoo. Accepting Plaintiff's allegations as true, Goldman Defendants are merely investors in Voodoo. Compl. ¶¶ 192, 194, 208, 210. Accordingly, Plaintiff's allegations that Goldman Defendants knew of Voodoo's infringement are conclusory without further factual enhancement. Consequently, Counts 7 and 8 are dismissed.

### C. Counts 16-20 (State Law Claims)

Lastly, Defendants contend that Plaintiff's state-law claims should be dismissed because they are meritless. *See* Dkt. 51 at 26. Plaintiff brings claims against Defendant Voodoo for fraud, negligent misrepresentation, tortious interference, unjust enrichment, and conspiracy. Compl. ¶¶ 268-89. Each will be addressed in turn.

First, Plaintiff has failed to state claims for fraud or negligent misrepresentation because such claims must be pled with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 9(b). "[T]he 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *GIV, LLC v. IBM Corp.*, No. 3:07-cv-067, 2007 WL 1231443, at *5 (E.D. Va. Apr. 24, 2007) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)). Plaintiff's allegations fail

---

sufficient to support Defendants' knowledge of Voodoo's alleged prior infringement or Voodoo's alleged infringement of Knocky Balls or otherwise sustains a claim for contributory infringement. Therefore, Plaintiff's claim still fails.

16

to specify the time, place, and contents of any false representations made *to him*. Thus, the Court dismisses Counts 16 and 17.

Second, Defendants assert that because Plaintiff's claim for tortious interference with a business relationship or expectancy is "grounded on the prior claims of fraud and misrepresentation," Plaintiff's claim should fail. Dkt. 51 at 26–27. However, Defendants do not support their argument with reference to Plaintiff's allegations, nor do they discuss the elements of such a claim.

> The elements of tortious interference with a business relationship in Virginia are: "(1) the existence of a business relationship or expectancy, with a probability of future economic benefit to [the] plaintiff; (2) defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that absent defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy; and (4) damage to plaintiff."

*Adnet, Inc. v. Soni*, 66 F.4th 510, 518–19 (4th Cir. 2023) (quoting *Williams v. Dominion Tech. Partners, LLC.*, 576 S.E.2d 752, 757 (Va. 2003) (citation omitted)).

Here, the Court finds that Plaintiff sufficiently alleges tortious interference for the motion to dismiss stage. First, Plaintiff asserts that there was a business relationship with Google to distribute Knocky Balls through Google Play. Compl. ¶ 280. Second, Plaintiff alleges that Voodoo knew that Knocky Balls was on Google Play, which distributes games to users. *Id.* Third, Plaintiff alleges that Defendant asked Google to remove Knocky Balls from Google Play for violating their impersonation policy. *Id.* Lastly, Google removed Knocky Balls from Google Play which Plaintiff alleges caused damage because he cannot restore Knocky Balls without risking a permanent ban. *Id.* Thus, construed liberally and taken as true, Plaintiff alleges enough facts to satisfy each element of the tortious interference claim under Count 18. Thus, Defendants' Motion is denied with respect to this claim.

Plaintiff's claim for unjust enrichment fails.

17

> To establish an unjust enrichment claim, the plaintiff must allege three elements: "(1) a benefit conferred on the defendant by the plaintiff; (2) knowledge on the part of the defendant of the conferring of the benefit; and (3) acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value."

*GIV, LLC*, 2007 WL 1231443 at *2 (quoting *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 299 F. Supp. 2d 565, 576 (E.D. Va. 2004)). Plaintiff does not allege that he conferred a benefit on Defendants. Therefore, Plaintiff has failed to state a claim for unjust enrichment. The Court dismisses Count 19.

Finally, Plaintiff fails to state a claim for common law conspiracy. To survive the motion to dismiss stage, Plaintiff must allege: "(1) an agreement between two or more persons; (2) to participate in an unlawful overt act; (3) injury caused by such unlawful overt act; and (4) that the overt act was done pursuant to and in furtherance of the common scheme." *Steele v. Goodman*, 382 F. Supp. 3d 403, 424 (E.D. Va. 2019) (citing *Skillstorm, Inc. v. Elec. Data Sys., LLC*, 666 F. Supp. 2d 610, 618 (E.D. Va. 2009)) (citation modified). Plaintiff alleges, among other things, that Goldman Defendants funded Voodoo and provided expertise, and that both Defendants "cloned" Plaintiff's game. Compl. ¶¶ 287–88. However, Plaintiff does not allege that an agreement existed between Defendants, nor can the Court infer such an agreement from the factual assertions in the Complaint. Therefore, Plaintiff has failed to state a claim for common law conspiracy. The Court dismisses Count 20.

### D. Motion for Sanctions

Plaintiff requests that this Court sanction Defendants for "falsifying" Plaintiff's logo in a prior motion to dismiss. Dkt. 62 at 1. Plaintiff contends that entry of default judgment against Defendants on his trademark infringement claims is an appropriate sanction. *Id.* at 5-6. The Court disagrees and, accordingly, denies Plaintiff's motion.

18

Plaintiff insists that default judgment is warranted under the factors from *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494 (4th Cir. 1977). Dkt. 62 at 13–14. The *Wilson* factors apply to default judgment sanctions for failure to comply with discovery orders under Rule 37 of the Federal Rules of Civil Procedure. *Smith v. Devine*, 126 F.4th 331, 342–43 (4th Cir. 2025) (discussing the application of the *Wilson* factors in relation to discovery sanctions). This Court has issued no discovery orders, and Plaintiff's motion does not appear to have anything to do with discovery. Thus, Plaintiff's request is better considered under either Rule 11, or the Court's inherent power to impose sanctions.

Courts may impose sanctions on a party under Rule 11 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 11. Rule 11 requires parties to certify that any pleading, written motion or other paper, "is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed. R. Civ. P. 11(b)(1). "A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by those similarly situated." *Royal Ins. v. Lynnhaven Marine Boatel, Inc.*, 216 F. Supp. 2d 562, 565 (E.D. Va. 2002).

Plaintiff has not shown that Defendants have violated Rule 11 or otherwise failed to correct any alleged violation of Rule 11. Plaintiff does not contend the instant motion to dismiss contains a false or fabricated image of his logo. It appears the issue, which was raised in Plaintiff's prior motion for sanctions, was corrected. *See* Dkt. 69 at 1-3. Moreover, it was not relevant to the D.C. District Court's disposition of the motion to dismiss because the court could not decide Plaintiff's trademark claims. Dkt. 43 at 24 (denying Plaintiff's motion for sanctions without prejudice); Dkt. 28 (accepting Plaintiff's representation that Defendants used the wrong logo). Therefore, the Court cannot find Plaintiff was prejudiced by Defendants' inclusion of the incorrect logo. "[The power

to] impose sanctions based on litigation conduct 'ought to be exercised with great caution.'" *Lokhova v. Halper*, 441 F. Supp. 3d 238, 267 (E.D. Va. 2020) (quoting *Royal Ins.*, 216 F. Supp. 2d at 567). The Court declines to impose Rule 11 sanctions on Defendants.

Similarly, Plaintiff has offered no basis for the Court to exercise its inherent power to impose sanctions. "Only in instances of bad faith, vexatious, wanton, or for oppressive reasons" should the Court employ its inherent power to vindicate a party's actions." *Royal Ins.*, 216 F. Supp. 2d at 567 (citation modified). Plaintiff has not shown that Defendants have acted in bad faith, wantonly, vexatiously, or for oppressive reasons. Indeed, Defendants note, and Plaintiff does not dispute, that Defendants quickly corrected the logo after Plaintiff advised them of the discrepancy and filed a Notice of Erratum. Dkt. 38. Therefore, the Court will not impose sanctions under its inherent power. Plaintiff's Motion for Sanctions is denied.

## Conclusion

Plaintiff has alleged facts sufficient to support his trademark infringement and tortious interference claims with respect to Defendant Voodoo but not with respect to any of his remaining claims. In addition, Plaintiff has not met the standard for a motion for sanctions. Therefore, Defendants' Motion to Dismiss is granted in part and denied in part, and Plaintiff's Motion for Sanctions is denied.

A separate order will issue.

Entered this 29th day of September, 2025
Alexandria, Virginia

/s/
Patricia Tolliver Giles
United States District Judge